## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- x

David Wittman, individually and on behalf
of all others similarly situated,

               Plaintiff,

      v.

KSF Acquisition Corporation,

            Defendant.

------------------------------------------------------- x

CASE NO. 2:22-cv-04023

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff David Wittman ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant KSF Acquisition Corporation ("Defendant" or "KSF") based on Defendant's false and deceptive advertising and labeling of its SlimFast smoothie and shake mix products. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## SUMMARY OF THE ACTION

1.     This case is predicated on a systemic course of false, misleading, and unlawful conduct: Defendant has falsely and deceptively misrepresented the amount of protein in its SlimFast smoothie and shake mix products (the "Products").[1]

---

[1] The Products include the following: (1) SlimFast Original Meal Replacement Shake Mix; (2) SlimFast Advanced Nutrition Smoothie Mix; (3) SlimFast Diabetic Weight Loss Meal Shake; and (4) SlimFast Advanced Immunity Smoothie Mix.

2.      The Products are one of the nation's leading smoothie and shake mixes, and Defendant is one of the nation's leading manufacturers of these products. Consumers trust Defendant to be transparent and sincere in its advertising, rather than deceitful and misleading. Unfortunately for consumers, this is not Defendant's practice with respect to its marketing and advertising of the Products.

3.      Specifically, on the front label of each of the Products, Defendant prominently places a representation, which promises a specific amount of protein in each serving of the Product (e.g., "20g HIGH PROTEIN") (hereinafter, the "Protein Representation").[2] Consumers understand this message simply: each serving of the Products' smoothie/shake mix contains the number of grams of protein promised on the front label.

4.      However, unbeknownst to consumers, the shake mix contains far fewer grams of protein than what is promised in the Protein Representation. Instead, the Products require *milk* to be added in order to obtain the grams of protein advertised in the Protein Representation.

5.      Nothing on the Products' front packaging discloses to consumers that they must add milk to receive the protein promised in the Protein Representation.

6.      Plaintiff and other consumers purchased the Products based on the reasonable belief that they would receive the grams of protein per serving promised in the Protein Representation from the Products alone. Had Plaintiff and other consumers known the truth— i.e., that consumers must add milk to obtain the grams of protein promised in the Protein Representation—they would not have purchased the Products or they would have paid less for them. Thus, Plaintiff and other consumers have suffered economic injury as a result of Defendant's deceptive marketing. Plaintiff and other consumers have also suffered a financial injury in the form of paying a price premium for a greater amount of protein than what was provided to them.

---

[2] See Paragraph 16, *infra*, for an example of the Protein Representation.

7.    Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled Products, seeking to prevent Defendant from continuing to falsely advertise the Products in the future, and obtain monetary compensation for purchases of the Products.

## PARTIES

### I.    Plaintiff

8.    Plaintiff is a citizen of the United States and the State of New York, and currently resides in Merrick, New York. In or around May 2022, Plaintiff purchased the SlimFast Advanced Nutrition Smoothie Mix Vanilla Cream Product from a Walmart in Uniondale, New York and a Target in Levittown, New York. In purchasing the Product, Plaintiff saw and relied on the Product's "20g HIGH PROTEIN" representation on the Product's front label. Based on this representation, Plaintiff believed that the smoothie mix itself contained 20 grams of protein per serving. Plaintiff's reasonable belief that the Product's shake mix contained the number of grams promised in the Protein Representation was an important factor in his decision to purchase the Product. Plaintiff would not have purchased the Product, or he would have paid less for it (i.e., he would not have paid a price premium), but for the aforementioned misrepresentation. Because he did not receive the number of grams of protein from the Product as promised, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.

### II.    Defendant

9.    KSF Acquisition Corporation is a Delaware corporation that maintains its principal place of business and headquarters in Palm Beach Gardens, Florida. It markets and distributes the Products throughout New York and the United States. The Products are sold in grocery stores such as Target and Walmart.

3

**JURISDICTION AND VENUE**

10.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. §1332(d) in that: (1) this is a class action involving more than 100 Class members; (2) the parties are minimally diverse, as members of the proposed class are citizens of states different than Defendant's home state; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

11.    This Court has personal jurisdiction over Defendant because it conducts and transacts substantial business in New York, and intentionally and purposefully placed the Products into the stream of commerce within New York.

12.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Namely, Plaintiff purchased the Product in this District.

**FACTUAL BACKGROUND**

**A.    Defendant Misleads Consumers About the Amount of Protein in Each Serving of the Products**

13.    Defendant owns SlimFast, one of the leading dietary shake and smoothie mix brands in the United States. Consumers trust Defendant to be honest and forthright in its advertising and marketing of its products, including the Products at issue here.

14.    Despite this trust, Defendant has engaged in false and deceptive advertising in the marketing and sale of the Products.

15.    For example, as demonstrated below, on the front label of each of the Products, Defendant prominently places a representation which promises a specific number of grams of

4

protein in each serving of the smoothie or shake mix (e.g., "20g HIGH PROTEIN") (hereinafter, the "Protein Representation").



16.     Based on the foregoing example, a reasonable consumer would expect the smoothie mix to contain 20 grams of protein per serving. However, unbeknownst to

consumers, the SlimFast Advanced Nutrition Smoothie Mix does not contain "20g HIGH PROTEIN" per serving but instead, contains only *12g of protein per serving*. This means that the Product fails to provide 40% of the promised grams of protein per serving.

17.    Defendant's other Products suffer from the same flaw. Most shockingly, SlimFast's Original Product promises "10g PROTEIN" per serving, but the mix only contains 2g of protein per serving. The Original Product fails to provide a considerable 80% of the promised grams of protein.

18.    The Advanced Immunity Product similarly promises "20g PROTEIN" per serving, but only provides 12g of protein per serving. The Diabetic Weight Loss Products promise 10-11g of protein per serving, but provide only 2-3g of protein per serving.

19.    Nothing on the Products' front packaging discloses to consumers that they must add milk to receive the protein promised in the Protein Representation.

20.    As a result, Defendant's labeling of the Products is false and deceptive, and misleads reasonable consumers.

21.    Complaints by other purchasers of the Products show that this deception is not an isolated incident experienced by Plaintiff. Below are a few of many complaints by consumers of the Products regarding this precise issue:[3]

 Jenny

⭐☆☆☆☆  **Misleading and fraudulent information**

Reviewed in the United States on November 27, 2018

Style: Advanced Nutrition | Flavor Name: Vanilla Cream | Size: 12 Servings (Pack of 1) | **Verified Purchase**

This product does not contain the 20 grams of protein it claims. It only contains 12 grams of protein per serving. In order to reach the 20 grams you have to mix it with 8 oz. of dairy milk. If you are lactose intolerant or just avoid dairy this is not doable. All through the description of this product it claims that the "powder" contains 20 grams of protein. False and misleading. When I complained to the company, they said they were sorry and that I should return the product if I was unhappy. Great! So now I have to pay the return shipping to send back a product I was duped into buying. Wow! Thanks for nothing!

355 people found this helpful

 Lynette Molina

★☆☆☆☆  **Do not waste your money**

Reviewed in the United States on September 29, 2019

Style: Advanced Nutrition | Flavor Name: Vanilla Cream | Size: 12 Servings (Pack of 2) | **Verified Purchase**

It contains a deceiving wrapper making you think that the protein grams you will get are from the shake powder, but in reality they are counting the milk's protein on the grams advertised. I cant drink milk so it was such a waste of money. Any other protein brand indicates the protein grams in yhe from of the label for the powder only, then will have a chat with or without milk on the nutritional facts.

 Zakira

★☆☆☆☆  **This product only has 2g protein as compared to the advertised 10g!!**

Reviewed in the United States on June 9, 2020

Flavor Name: Rich Chocolate Royale | Size: 34 Servings (Pack of 1) | **Verified Purchase**

It advertises 10g protein If you look on the Nutritional Facts it's only 2g protein and only 10g if you mix it with non fat milk! False advertising. What if you mix it with water or something other than milk? They shouldn't put that on the front of the can if that's not accurate. I decided to go with Pure Protein powder that I found on amazon. Around the same price, 25g of protein and only 4g of sugar compared to the 11g with this product. Also around the same calories. Way better for your body.

 Christine A Berger

★☆☆☆☆  **CONTAINS **TWO** GRAMS OF PROTEIN**

Reviewed in the United States on September 13, 2018

Flavor Name: Rich Chocolate Royale | Size: 34 Servings (Pack of 1) | **Verified Purchase**

The product arrived and I was furious to see it contains only 2 grams of protein. I feel the marketing is blatantly misleading in repeatedly stating 10 grams of protein. The other 8 is from milk you have to add yourself; it's also strongly implied this product is ready-to-drink with water like the familiar cans. I looked at my husband's hot cocoa mix and it's literally the same amount of protein and calories; 2 grams protein and 100 calories. And at least the cocoa I could drink mixed with water! I am seeking a refund. This is not a nutritional product and I don't feel it would add any health or wellness benefits over just drinking a glass of plain milk.

22.    Notably, other smoothie and shake mix manufacturers advertise on their products' front labels the amount of protein that consumers will receive based on the *products alone*, irrespective of whether the consumer adds milk or any other ingredient.

23.    As demonstrated below, one of the nation's leading nutrient supplement companies, Nestle's Garden of Life, advertises the grams of protein consumers receive *solely* from the content of its Garden of Life Fit High Protein For Weight Loss dietary shake product.[4] The product's front label advertises "28 grams" of protein per serving, and this is precisely what consumers receive from the product's contents alone.

---

[4] https://www.amazon.com/Garden-Life-Organic-Meal-Replacement/dp/B01NA7VLNL/ref=sr_1_16?crid=1XIVG45GIOYG2&keywords=Protein%2Bshake%2Bmix&qid=1649130728&rdc=1&sprefix=protein%2Bshake%2Bmi%2Caps%2C154&sr=8-16&th=1 (last visited July 8, 2022).



# Supplement Facts

Serving Size 1 Level Scoop (About 46.5g)
Servings Per Container 20

| | Amount Per Serving | % Daily Value |
|---|---|---|
| Calories | 180 | |
| Total Fat | 3 g | 4%[1] |
|   Saturated Fat | 0.5 g | 3%[1] |
|   *Trans* Fat | 0 g | |
|   Polyunsaturated Fat | 1 g | |
|   Monounsaturated Fat | 1 g | |
| Sodium | 280 mg | 12% |
| Total Carbohydrate | 11 g | 4%[1] |
|   Dietary Fiber | 4 g | 14%[1] |
|     Soluble Fiber | 2 g | |
|     Insoluble Fiber | 2 g | |
|   Total Sugars | <1 g | + |
|     Includes 0g Added Sugars | | 0%[1] |
| Protein | 28 g | 38%[1] |
| Vitamin D | 25 mcg (1,000 IU) | 125% |
| Calcium (naturally occurring) | 150 mg | 12% |
| Iron (naturally occurring) | 3 mg | 17% |
| Potassium (naturally occurring) | 90 mg | 2% |
| Vitamin A | 280 mcg | 31% |
| Vitamin C (naturally occurring) | 1.2 mg | 1% |
| Vitamin E (from Sunflower Oil) | 15 mg | 100% |
| Vitamin K | 130 mcg | 108% |
| Magnesium (naturally occurring) | 27 mg | 6% |
| Chromium (from Brown Rice Chelate) | 35 mcg | 100% |

24.    Another of the nation's leading nutrient supplement companies, Nature's Bounty, advertises its Complete Protein & Vitamin Shake Mix[5] in the same manner.



[5] https://www.amazon.com/Natures-Bounty-Complete-Collagen-Chocolate/dp/B08YS3TWTT/ref=sr_1_6?crid=1XIVG45GIOYG2&keywords=Protein+shake+mix&qid=1649130728&sprefix=protein+shake+mi%2Caps%2C154&sr=8-6 (last visited July 8, 2022).

**DIRECTIONS:** Mix two (2) scoops (33 g) with 8 oz of water. To increase the protein content to more than 20 grams per serving and enjoy a creamy texture, mix with 8 oz of skim milk. Shake can also be enjoyed by mixing with you favorite vegetarian milk alternative. Best served ice cold.

# Supplement Facts

Serving Size 2 Scoops (33 g)
Servings Per Container about 13

| Amount Per Serving | | %Daily Value |
|---|---|---|
| Calories | 110 | |
| Total Fat | 3 g | 4%** |
| Saturated Fat | 1 g | 5%** |
| Cholesterol | 25 mg | 8% |
| Total Carbohydrate | 11 g | 4%** |
| Dietary Fiber | 6 g | 21%** |
| Total Sugars | 2 g | *** |
| Includes 2g Added Sugars | | 4%** |
| Protein | 15 g | 30%** |
| Vitamin C (as Ascorbic Acid) | 60 mg | 67% |
| Vitamin D (as D2 Ergocalciferol) | 20 mcg (800 IU) | 100% |
| Thiamin (Vitamin B-1) (as Thiamin Hydrochloride) | 1.5 mg | 125% |
| Riboflavin (Vitamin B-2) | 1.7 mg | 131% |
| Niacin (as Niacinamide) | 20 mg | 125% |
| Vitamin B-6 (as Pyridoxine Hydrochloride) | 2 mg | 118% |
| Folate | 666 mcg DFE (400 mcg Folic Acid) | 167% |
| Vitamin B-12 (as Cyanocobalamin) | 6 mcg | 250% |
| Biotin (as d-Biotin) | 300 mcg | 1,000% |
| Pantothenic Acid (as d-Calcium Pantothenate) | 10 mg | 200% |
| Calcium | 230 mg | 18% |
| Iron | 3 mg | 17% |
| Phosphorus | 230 mg | 18% |
| Magnesium | 50 mg | 12% |
| Sodium | 100 mg | 4% |
| Potassium | 380 mg | 8% |
| Digestive Enzyme Blend Bromelain (from Pineapple), Papain (from Papaya fruit) | 11 mg | *** |
| Flaxseed | 888 mg | *** |
| which typically contains: | | |
| Alpha-Linolenic Acid (Omega-3) | 218 mg | *** |
| Other Fatty Acids | | *** |
| Collagen | 3 g | *** |

**Percent Daily Values are based on a 2,000 calorie diet.
***Daily Value not established.

25. Thus, it is more than reasonable for consumers to rely on the Protein Representations on the front label of the Products, especially when they are accustomed to seeing dietary shake mix products' front labels advertise the grams of protein based on the protein contained in the products *alone*.

26. The number of grams of protein contained in the Products is a material factor to Plaintiff and other reasonable consumers as the Products serve as nutritional shakes and meal replacements and protein is an essential nutrient for the human body.

27. Defendant's decision to highlight the purported protein in the Products through the conspicuous Protein Representation, in addition to the purchasing decisions and beliefs from consumers such as Plaintiff and the reviews depicted above, further demonstrate the materiality of the Protein Representation.

28. As the entity ultimately responsible for the manufacturing and advertising of the Products, Defendant is responsible for the accuracy of the information conveyed about the Products, including the representations on the front packaging.

29. Defendant knew or should have known that the Products' advertising is deceptive, and that reasonable consumers would believe the Products contain the number of grams of protein per serving promised on the Products' front label.

30. Through the use of misleading representations, Defendant commands a price that Plaintiff and the Class would not have paid had they been fully informed. Had Plaintiff been aware that the Product was falsely labeled, he would have purchased a different product or paid significantly less for it. Alternatively, had Plaintiff been aware that the Product was falsely labeled he would not have purchased the Product at all.

31. By the use of misleading representations, Defendant created increased market demand for the Products and increased its market share relative to what its demand and share would have been had it marketed the Products truthfully.

32.     Plaintiff and members of the Class were exposed to and justifiably relied upon the same material misrepresentations (i.e., the Protein Representation) throughout the class period. As such, this case fits squarely within the parameters for class certification.

### CLASS DEFINITION AND ALLEGATIONS

33.     Plaintiff brings this matter on behalf of himself and those similarly situated. Pursuant to Rule 23 of the Federal Rules of Civil Procedure (the "Rules" or "Rule"), Plaintiff seeks to represent the following class:

> All residents of New York who purchased the Products in New York for personal, family, or household consumption and not for resale within the applicable statute of limitation ("New York Class").

34.     Plaintiff reserves the right to amend the Class definition if discovery or further investigation reveal that any Class should be expanded or narrowed, divided into additional subclasses under Rule 23(c)(5), or modified in any other way.

35.     The following people and entities are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

36.     This action is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

37.     **Numerosity:** Members of each Class are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of Class members is unknown to Plaintiff but is likely to be ascertained by the Defendant's records. At a minimum, there likely are hundreds of thousands of Class members.

38.     **Commonality:** There are questions of law and fact common to the proposed class(es). Common questions of law and fact include, without limitations:

a.   whether Defendant's course of conduct alleged herein violates the statutes and other laws that are pled in this Complaint;

b.   whether reasonable consumers would rely upon Defendant's representations about the Products and reasonably believe the Products' Protein Representation;

c.   whether Defendant knew or should have known its representations were false or misleading;

d.   whether Defendant was unjustly enriched by retaining monies from the sale of the Products;

e.   whether certification of each Class is appropriate under Rule 23;

f.   whether Plaintiff and the members of each Class are entitled to declaratory, equitable, or injunctive relief, and/or other relief, and the scope of such relief; and

g. the amount and nature of the relief to be awarded to the Plaintiff and the Class, including whether Plaintiff and the Class are entitled to punitive damages.

39. **Typicality:** Plaintiff's claims are typical of the other Class members because Plaintiff, as well as Class members, purchased the Products. Plaintiff and the members of the Class relied on the representations made by the Defendant about the Products prior to purchasing the Products. Plaintiff and the members of each Class paid for Defendant's Products and would not have purchased them (or would have paid substantially less for them) had they known that the Defendant's representations were untrue.

40. **Adequacy:** Plaintiff will fairly and adequately protect the interests of the proposed Class as his interests do not conflict with the interests of the members of the proposed Class he seeks to represent, and he has retained counsel competent and experienced in class action litigation. Thus, the interests of the members of the Class will be fairly and adequately protected by Plaintiff and his counsel.

41. **Predominance:** Pursuant to Rule 23(b)(3), the common issues of law and fact identified in this Complaint predominate over any other questions affecting only individual members of the Class. Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's misconduct detailed at length in this Complaint.

42. **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this litigation because individual litigation of each claim is impractical. It would be unduly burdensome to have individual litigation of hundreds of thousands of individual claims in separate lawsuits, every one of which would present the

issues presented in the Complaint/lawsuit. Further, because of the damages suffered by any individual Class member may be relatively modest in relation to the cost of litigation, the expense and burden of individual litigation make it difficult, if not impossible. Furthermore, many of the Class members may be unaware that claims exist against the Defendant.

**CLAIMS FOR RELIEF**
**FIRST CLAIM FOR RELIEF**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
*(On Behalf of Plaintiff and New York Class)*

43.    Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein.

44.    New York General Business Law ("GBL") § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state."

45.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Class members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, packaging, marketing, and promoting the Products.

46.    Defendant misleadingly, inaccurately, and deceptively advertise and market its Products to consumers.

47.    Defendant's improper consumer-oriented conduct — promising on the Products' front labeling that the Products contain a specific number of grams of protein, when it contains fewer grams of protein than represented — is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Class members to purchase and pay a premium for Defendant's Products and to consume the Products when they otherwise would

not have. Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

48.     Plaintiff and the New York Class members have been injured inasmuch as they paid a premium for Products that did not—contrary to Defendant's representations—contain the amount of grams of protein as promised on the Products' front labels. Accordingly, Plaintiff and the New York Class members received less than what they bargained and/or paid for.

49.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Class members have been damaged thereby.

50.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Class members are entitled to monetary, compensatory, statutory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 350
### *(On Behalf of Plaintiff and the New York Class)*

51.     Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein.

52.     Plaintiff brings this claim on behalf of himself and the New York Class.

53.     New York General Business Law § 350 provides, in part, as follows: "False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

54.     GBL § 350-a(1) provides, in part, as follows:

> The term "false advertising" means advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is

misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual. …

55. Defendant's representation on the labeling of the Products that the Products provide a specific number of grams of protein, but providing few grams of protein than promised, is a materially misleading representation inasmuch as they misrepresent the number of grams of protein in the Products.

56. Plaintiff and the New York Class members have been injured inasmuch as they relied upon the labeling of the Products and paid a premium for products that did not—contrary to Defendant's representations—contain the number of grams of protein as promised in the Products' Protein Representation. Accordingly, Plaintiff and the New York Class members received less than what they bargained and/or paid for.

57. Defendant's labeling of the Products induced Plaintiff and the New York Class members to buy Defendant's Products. Thus, Defendant made material misrepresentations about the Products.

58. Defendant made the foregoing untrue and/or misleading representations willfully, wantonly, and with reckless disregard for the truth.

59. Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

60.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Class members are entitled to monetary, compensatory, statutory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**THIRD CLAIM FOR RELIEF**</u>
**VIOLATIONS OF BREACH OF EXPRESS WARRANTY STATUTES**
*(On behalf of Plaintiff and the New York Class)*

61.     Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein.

62.     Plaintiff brings this claim on behalf of himself and the New York Class for breach of express warranty under N.Y. U.C.C. Law § 2-313.

63.     Plaintiff and members of the New York Class formed a contract with Defendant at the time they purchased the Products. As part of that contract, Defendant represented on the front label of the Products that the Products contain a specific number of grams of protein, despite the Products not containing that amount of protein.

64.     This representation constitutes an express warranty and became part of the basis of the bargain between Plaintiff and members of the New York Class, on the one hand, and Defendant, on the other.

65.     Defendant made the representation to induce Plaintiff and members of the New York Class to purchase the Products, and Plaintiff and the New York Subclass relied on the representations in purchasing the Products.

66.     All conditions precedent to Defendant's liability under the above-referenced contract have been performed by Plaintiff and the New York Class.

67.     Express warranties by a seller of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and

becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description.

68.     Defendant breached the express warranties about the Products because, as alleged above, the Products do not contain the amount of protein as promised in the Products' Protein Representation.

69.     As a result of Defendant's breaches of express warranty, Plaintiff and the New York Class members were damaged in the amount of the premium price they paid for the Products, in amounts to be proven at trial.

70.     In June 2021, Plaintiff discovered this breach. On June 21, 2022, Plaintiff, on behalf of himself and others similarly situated, sent a notice and demand letter to Defendant providing notice of Defendant's breach.

## FOURTH CLAIM FOR RELIEF
## IN THE ALTERNATIVE, UNJUST ENRICHMENT
### *(On behalf of Plaintiff and the New York Class)*

71.     Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein.

72.     To the extent the Court finds that Plaintiff and the members of the New York Class did not form a contract with Defendant at the time they purchased the Products, Plaintiff brings this claim for unjust enrichment in the alternative, individually and on behalf of the New York Class.

73.     Plaintiff and members of the New York Class purchased Defendant's Products and paid a premium for the Products. The Products' Protein Representation misrepresented the amount of protein in the Products, which commanded a price premium.

74.    Defendant had knowledge of such benefit and obtained the benefit by its misrepresentation because the misrepresentation induced reasonable consumers to purchase the Products they would not otherwise have purchased or purchased at the advertised price.

75.    Defendant appreciated this benefit and knowingly accepted it at the expense of, and to the detriment of, Plaintiff and members of the New York Class. Defendant currently retains this benefit.

76.    Defendant's acceptance and retention of the benefits is inequitable and unjust because the benefit was obtained by Defendant's misconduct detailed at length in this Complaint.

77.    Equity cannot in good conscience permit Defendant to be economically enriched for such action at the expense of Plaintiff and New York Class members, and therefore restitution and/or disgorgement of such economic enrichment is required.

## FIFTH CLAIM FOR RELIEF
### COMMON LAW FRAUD
*(On behalf of Plaintiff and the New York Class)*

78.    Plaintiff repeats and realleges Paragraphs 1-42 as if fully set forth herein.

79.    Plaintiff brings this claim on behalf of himself and the New York Class.

80.    Defendant has willfully, falsely, and knowingly misrepresented the Products' amount of protein through the Products' Protein Representation, as they knew that the Products' contained less grams of protein per serving than represented.

81.    Defendant has therefore made knowing, fraudulent misrepresentations as to the Products.

82.    Defendant's misrepresentations were material (i.e., they affected Plaintiff and New York Class members' purchasing decisions given their importance), because they relate

to the central functionality of the Products as nutritional shake mixes, given that the Products contain fewer grams of protein than advertised.

83.    Defendant knew or recklessly disregarded the fact that the Products did not contain the number of grams of protein as promised in the Products' Protein Representation.

84.    Defendant intended that Plaintiff and members of the New York Class rely on the Protein Representation, as if they had known the truth of the protein levels in the Products, they would have less for the Products or would not have purchased them at all.

85.    Plaintiff and members of the New York Class have reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Products, and if Plaintiff and members of the New York Class had known the truth about the Products, they would not have paid monies for the Products or would have paid less monies for the Products.

86.    For these reasons, Plaintiff and members of the New York Class have suffered monetary losses, including interest they would have accrued on these monies, as a direct and proximate result of Defendant's fraudulent conduct.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of other members of the proposed New York Class, respectfully request that the Court enter judgment in Plaintiff's favor and against Defendant as follows:

a.    Declaring that this action is a proper class action, certifying the New York Class as requested herein, designating Plaintiff as Class Representative and appointing the undersigned counsel as Class Counsel;

b.    A declaration or declaratory judgment that Defendant's conduct has violated and continues to violate the statutes and laws cited herein;

c.  An order enjoining Defendant to refrain from the acts and practices cited herein and to undertake an immediate public information campaign to inform members of the New York Class as to its prior practices;

d.  An order requiring imposition of a constructive trust and and/or disgorgement of Defendant's ill-gotten gains and to pay restitution to Plaintiff and members of the New York Class to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, fraudulent or unfair business act or practice;

e.  An award of damages, including all available statutory and punitive damages, pursuant to the statutes and the causes of action pled herein;

f.  Distribution of any monies recovered on behalf of members of the Class via fluid recovery or *cy pres* recovery where necessary and applicable, to prevent Defendant from retaining the benefit of its wrongful conduct;

g.  an award of all recoverable costs and expenses, including reasonable fees for Plaintiff's attorneys; and

h.  an award of pre- and post-judgment interest to Plaintiff and members of the New York Class if applicable; and, ordering further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff and members of the Class demand a jury trial on all issues so triable.


DATED: July 8, 2022                    **CUSTODIO & DUBEY, LLP**

                                       By: ___/s/ Robert Abiri_____


                                       Robert Abiri (SBN 238681)
                                       *E-mail:* *abiri@cd-lawyers.com*
                                       445 S. Figueroa Street, Suite 2520
                                       Los Angeles, CA 90071
                                       Telephone: (213) 593-9095
                                       Facsimile: (213) 785-2899


                                       *Attorney for Plaintiff and the*
                                       *Putative Classes*